UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark Ploen, | Case No. 21-cv-2248 (PJS/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| AIG Specialty Insurance Company, | |
| Defendant. | |
| Richard Enrico, | Case No. 21-cv-2264 (PJS/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| AIG Specialty Insurance Company, | |
| Defendant. | |

This matter is before the Court on Defendant AIG Specialty Insurance Company's ("AIG") Motions to Compel (Dkt. No. 23 in Case No. 21-cv-2248; Dkt. No. 21 in Case No. 21-cv-2264).[1] AIG seeks to compel documents from Plaintiffs Mark Ploen ("Ploen") and Richard Enrico ("Enrico"), as well as from nonparties Tony Jacobson ("Jacobson"), Kutak Rock ("Kutak"), Fredrikson & Byron ("Fredrikson"), Messerli & Kramer

---

[1] The motions and related filings in each case are essentially identical, and, where appropriate, the Court will cite only to the *Ploen* docket in the interests of simplicity and efficiency.

("Messerli"), and Faegre Drinker Biddle & Reath ("Faegre"). For the reasons set forth below, the motions are granted in part and denied in part.

I.  **Background**

In 2016, Jacobson, Ploen, and Enrico each invested (or loaned)[2] $3 million in AOM Holdings, LLC ("AOM") and received membership units in return. (*See* Boyd Decl. Exs. 4–6, Dkt. No. 26-1.) Jacobson, a close friend of Ploen and Enrico, was the CEO of AOM at the time. (Boyd Decl. Ex. 16 at 74–75, Dkt No. 26-2; Ex. 17 at 15–16, Dkt. No. 26-4; Ex. 18 at 13–14, Dkt. No. 5.) According to Jacobson, Ploen, and Enrico, AOM did not pay them dividends (or interest), as promised. (*See* Boyd Decl. Exs. 1–3, Dkt. No. 26-1.) Thus, in 2020, Ploen, Enrico, and Jacobson each sued AOM in state court for recovery of their investments, plus interest. (*See* Boyd Decl. Exs. 1–3.) Faegre represented Ploen in his state-court case against AOM; Messerli represented Enrico in his state-court case against AOM; and Kutak represented Jacobson in his state-court case against AOM.

In June 2021, Ploen and Enrico entered into *Miller-Shugart* agreements[3] with AOM to settle their state-court cases.[4] (*See* Boyd Decl. Exs. 11, 12, Dkt. No. 26-1.) Under those agreements, AOM paid Ploen and Enrico $250,000 each and stipulated to the entry of

---

[2] There is an apparent dispute about whether the transactions were an investment or a loan, but the parties agree that the distinction is not material to the motions before the Court.

[3] In a "*Miller-Shugart*" agreement, "a defendant settles a claim with a plaintiff for a stipulated sum, but conditions the settlement on the plaintiff's right to seek recovery only from the defendant's insurer." *In re RFC & ResCap Liquidating Trust Action*, 399 F. Supp. 3d 804, 812 (D. Minn. 2019) (citing *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982)).

[4] Jacobson's state-court case ended with summary judgment granted to AOM and is on appeal to the Minnesota Court of Appeals.

2

judgments in the amount of $3 million each. In the federal court cases presently assigned to this Court, Ploen and Enrico are attempting to enforce the *Miller-Shugart* agreements against AIG as AOM's insurer.

AIG denied coverage for Ploen's and Enrico's claims under Exclusion 4(h) of the insurance policy issued to AOM, which excludes coverage for claims brought by a security holder, creditor, or interest holder unless the claim "is instigated and continued independent of, and without the active solicitation, active assistance, or active participation of, or intervention of" a company executive. (Def.'s Mem. Supp. Mot. Compel at 9, Dkt. No. 25; Boyd Decl. ¶ 2.) AIG posits that Jacobson, as the CEO of AOM, conferred and consulted with Ploen and Enrico before they filed suit in state court against AOM and afterward on litigation strategy, therefore triggering Exclusion 4(h). (Def.'s Mem. Supp. at 8, 10.) AIG also contends the settlement agreements were unreasonable and the product of collusion. (*Id.* at 2, 5.)

After AIG denied coverage for the *Miller-Shugart* settlements, AOM brought suit against AIG in state court. (Dougherty Decl. Ex. 1, Dkt. No. 37-1.) That litigation is ongoing, and Fredrikson represents AOM in that action.

To determine the applicability of Exclusion 4(h) and the enforceability of the *Miller-Shugart* agreements, AIG served discovery requests on Ploen and Enrico for documents related to the state court actions and settlements, including communications and call records involving their counsel, counsel for AOM, and counsel for Jacobson. (*E.g.*, Boyd Decl. Exs. 26, 28, Dkt. No. 26-6.) AIG also served state-court and federal-court subpoenas

3

on Jacobson, Kutak, Messerli, Faegre, and Fredrikson for identical documents. (Boyd Decl. Exs. 24, 25, 27, 29, 30.)

In response to the discovery requests and subpoenas, Ploen and Enrico either produced or agreed to produce all communications between Ploen and Jacobson about AOM and the state-court lawsuits, all communications between Enrico and Jacobson about AOM and the state-court lawsuits, all communications between the lawyers for Ploen and the lawyers for Jacobson, all communications between the lawyers for Enrico and the lawyers for Jacobson, and all communications between the lawyers for Ploen, Enrico, and Jacobson. (Pls.' Mem. Opp'n Mot. Compel at 3, Dkt. No. 29; Hr'g Tr. at 29.) In response to discovery requests that AIG served on AOM in the ongoing state court litigation between them, AOM produced or agreed to produce all discovery from the Ploen and Enrico state court actions, as well as written communications between AOM's, Ploen's, Enrico's, and Jacobson's counsel concerning the state court actions and the settlement of those actions. (Fredrikson's Mem. Opp'n Mot. Compel at 6, Dkt. No. 36.)

By all accounts, the parties and nonparties have produced or agreed to produce a significant number of documents. At the hearing on the motion to compel, AIG described three categories of documents as remaining in dispute: (1) communications between Ploen's and Enrico's attorneys; (2) entries on attorney billing invoices that describe communications between counsel for Enrico, Ploen, Jacobson, and AOM; and (3) the mediation statement and mediation-related communications between counsel in settling Ploen's and Enrico's state-court cases against AOM. (Hr'g Tr. at 10, 55, Dkt. No. 43.)

4

## II. Legal Standards

Federal Rule of Civil Procedure 26(b)(1) governs the scope and limits of discovery between parties: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Relevance is construed broadly at the discovery stage." *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012). Beyond being relevant, information sought in discovery must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors important to a court's proportionality analysis include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Rule 45 governs the subpoenas served on nonparties Faegre, Fredrikson, Messerli, Jacobson, and Kutak. A subpoena may command the production of "documents, electronically stored information, or tangible things" and "requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). "Pursuant to a subpoena, a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies." *Keefe v. City of Minneapolis*, No. 9-CV-2941 (DSD/SER), 2012 WL 7766299, at *3 (D. Minn. May 25, 2012). Thus, the same standards of relevance and proportionality apply. *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/HB), 2022 WL 972401, at *7 (D.

Minn. Mar. 31, 2022). That said, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "Concern for the burden on a non-party subject to a subpoena carries special weight when balancing competing needs." *In re Pork*, 2022 WL 972401, at *7. A court must enforce the duty imposed by Rule 45(d)(1) "and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

**III.   Discussion**

**A.   Communications Between Ploen's and Enrico's Attorneys in the State-Court Cases Against AOM**

AIG seeks certain communications between Ploen's and Enrico's attorneys in the state-court actions against AOM. AIG clarified at the hearing that it is not asking for any attorney-client communications; it is seeking only "[a]t most . . . work product." (Hr'g Tr. at 14.)

The first category of requested attorney communications described by AIG are those that contain facts provided by Jacobson to Ploen or Enrico or could describe Jacobson's involvement in or influence on Enrico's and Ploen's state court cases and settlements. (Def.'s Mem. Supp. at 15.) The Court agrees that these communications could contain relevant information. For example, communications between Ploen's and Enrico's state-court counsel that discuss Jacobson's involvement in or assistance with the state court litigation or the *Miller-Shugart* settlements could be relevant to the applicability of

Exclusion 4(h). The Court also finds that the communications are proportional to the needs of the case. Though Ploen and Enrico argued that the communications would be duplicative of discovery that has already been produced to AIG, that is not necessarily so. Ploen's and Enrico's attorneys could have communicated about Jacobson's involvement or assistance and shared information that would not necessarily have been reflected in communications between Ploen and Jacobson, Enrico and Jacobson, Ploen's counsel and Jacobson's counsel, or Enrico's counsel and Jacobson's counsel. Thus, the Court finds proportional communications between Ploen's and Enrico's state-court attorneys that mention Jacobson by name.

AIG also seeks Ploen's and Enrico's state-court attorneys' communications about the strengths and weaknesses of their state-court claims against AOM and the process through which the state-court cases settled. (Def.'s Mem. Supp. at 16.) AIG argues the communications could be relevant to the reasonableness of the settlements and whether collusion occurred. As to AIG's reasonableness argument, reasonableness is an objective inquiry, and a litigant's attorney's view of the claims is not a relevant factor. *See King's Cove Marina, LLC v. Lambert Com. Constr. LLC*, 958 N.W.2d 310, 323 (Minn. 2021). Thus, the Court finds the communications would not be relevant. Moreover, AIG has all the documents filed in the underlying cases, including written discovery and depositions, as well as communications between AOM's lawyers and Ploen's, Enrico's, and Jacobson's lawyers.

With respect to the collusion argument, any collusion would be between the parties who settled with each other—AOM and Ploen, or AOM and Enrico—not between Ploen

7

and Enrico. *See Am. Fam. Mut. Ins. Co. v. Donaldson*, 820 F.3d 374, 380 (8th Cir. 2016); *Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525, 529 (8th Cir. 1996). AIG has already received, or has been assured it will receive, all communications between Ploen's and Enrico's state-court attorneys and AOM during the state-court cases, including communications about settlement. However, like the attorney communications that mention Jacobson by name, communications between Ploen's and Enrico's state-court counsel that discuss settlement with AOM could contain evidence relevant to collusion. Further, those communications could contain information, strategies, or ideas that would not necessarily have been reflected in other communications. Thus, the Court finds that this set of attorney communications is both relevant and proportional.

But even though some of the requested attorney communications are relevant and proportional, the Court finds they contain protected work product. Federal law applies to claims of work-product protection in diversity cases such as these. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). The work-product doctrine protects from discovery a party's "documents and tangible things that are prepared in anticipation of litigation by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "There are two kinds of work product—ordinary work product and opinion work product." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). "Ordinary work product includes raw factual information," *id.*, and is discoverable only if the materials "are otherwise discoverable under Rule 26(b)(1)" and the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii).

"Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories" and is rarely discoverable. *Baker*, 209 F.3d at 1054. The party claiming work-product protection has the burden to establish the protection, and the party seeking ordinary work product has the burden to establish need and burden. *Regents of the Univ. of Minn. v. United States*, No. 17-CV-3690 (DSD/ECW), 2021 WL 5042491, at *9 (D. Minn. Oct. 29, 2021) (citing *Baker*, 209 F.3d at 1054; *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997)).

AIG argues that the communications between Ploen's and Enrico's state-court litigation attorneys cannot be work product because Ploen and Enrico were separately represented. In *John Morrell & Co. v. Loc. Union 304A of United Food & Com. Workers, AFL-CIO*, 913 F.2d 544 (8th Cir. 1990), the Eighth Circuit recognized a "joint defense privilege" between litigants who were "aligned on the same side" after they settled with each other and faced another party's cross-claims. *Id.* at 555–56. Information shared between their attorneys was "for the limited purpose of assisting in their common cause" *Id.* at 556 (quoting *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977)). "The joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." *W. Fuels Ass'n, Inc. v. Burlington N. R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984), *cited with approval in John Morrell*, 913 F.2d at 556. "[D]isclosure of work product to friendly litigants in related cases or to others with friendly interests is not beyond the scope of such privilege and will not constitute a waiver of the same." *Id.*

Similar to the joint-defense privilege, the common-interest doctrine permits the disclosure of privileged information to a third party, without waiver, under certain circumstances. Several district courts in the Eighth Circuit have concluded that the common-interest doctrine can apply to work product. *See, e.g., Upsher-Smith Labs., Inc. v. Fifth Third Bank*, No. 16-CV-0556 (JRT/HB), 2018 WL 11424200, at *8 (D. Minn. Apr. 23, 2018); *United States v. Dico, Inc.*, No. 4:10-CV-00503, 2017 WL 9049852, at *4–5 (S.D. Iowa Mar. 27, 2017); *Argenyi v. Creighton Univ.*, No. 8:09-CV-341, 2011 WL 3497489, at *2 (D. Neb. Aug. 10, 2011); *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 583 (D.S.D. 2006). The common-interest doctrine applies to work product when "the party claiming the exception demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy." *Upsher-Smith*, 2018 WL 11424200, at *7 (cleaned up). The threshold question, of course, is whether "except for the disclosure to the third party with whom a common legal interest is claimed, the attorney-client privilege or work-product doctrine would have applied." *Id.* at *8.

AIG argues that the privilege log reflecting communications between Ploen's and Enrico's state-court lawyers, provided by Ploen, "does not meaningfully describe the substance of the communications." (Def.'s Mem. Supp. at 17 (citing Dkt. No. 26-7 (Boyd Decl. Ex. 34 at 4, 1–6[5]))) The Court disagrees. The six entries on the privilege log identified by AIG in its memorandum are: "attorney notes regarding litigation from call

---

[5] Ploen's privilege log begins on page 5, not page 4, of Exhibit 34, and entries 1–6 may be found on page 5.

with attorneys Jack Harper, Michael Cockson, Nathaniel Zylstra, Jon Breyer, Christopher Haugen, Joshua Hasko"; "communication regarding mediator selection"; "communication regarding mediation statement with draft"; and "communication regarding mediation scheduling." (Boyd Decl. Ex. 34 at 5, 1–6, Dkt. No. 26-7 at 59.) The Court finds that these entries sufficiently describe the nature of the communications and that the basis for the claim of work-product protection is clear. As AIG well knows, Ploen and Enrico brought similar claims against AOM arising from their respective loans of $3 million to AOM in identical transactions. The notation "attorney notes regarding litigation" in the privilege log entry can only refer to that litigation, given the identity of the lawyer making the notes, the identity of the lawyers on the call that the notes memorialize, the date on which the call took place, and, of course, the fact that the privilege log is the privilege log for this case and not another. For the same reasons, the notations concerning the "mediator" and "mediation" also obviously refer to the mediation of that litigation. It is well established that documents and communications relating to mediation can be protected work product. *E.g., Meighan v. TransGuard Ins. Co. of Am.*, 298 F.R.D. 436, 445 (N.D. Iowa 2014).

The Court finds that the common-interest doctrine applies to the communications between Ploen's and Enrico's state-court attorneys that AIG seeks to compel. Ploen and Enrico had common legal interests in their claims against AOM. They participated in the same transaction with AOM that gave rise to their alleged losses. Communications between their attorneys were made in the course of formulating common legal strategies. Accordingly, the exchange of information between Ploen's and Enrico's state-court attorneys did not waive work-product protection.

AIG did not address a substantial need for or inability to obtain the equivalent of the protected work product in its written memorandum, but it did make a conclusory statement at the hearing. (Hr'g Tr. at 15–16 ("AIG has established a substantial need for this information to prepare a response to Enrico and Ploen's contention they're entitled to coverage under the exception. And there is an undue hardship to obtain this information because it's not otherwise available.").) Even assuming the attorney communications contained only ordinary work product, AIG's conclusory statement does not satisfy its burden to show substantial need or an inability to obtain a substantial equivalent by other means.

There is one final matter to address: AIG's request for a privilege log pursuant to Rule 26(b)(5). AIG acknowledges that Ploen has provided a log of privileged or protected communications between Ploen's and Enrico's state-court counsel, and the Court has found that the six entries on the log challenged by AIG adequately describe the substance of the communications. If Enrico has not yet provided a log of privileged materials, he must do so within fourteen days of the date of this Order, unless AIG and Enrico agree that Ploen's privilege log will suffice.

### B. Entries on Attorney Billing Invoices that Describe Communications Among or Between Counsel for Enrico, Ploen, Jacobson, and AOM

AIG seeks portions of attorney billing invoices documenting or summarizing communications among or between counsel for AOM, Enrico, Ploen, and Jacobson. (Hr'g Tr. at 18.) AIG contends that these entries will reflect the nature and frequency of communications between counsel for Ploen, Enrico, and Jacobson, which could be relevant

to the applicability of Exclusion 4(h); and the content of communications between counsel for Ploen, Enrico, and AOM, which could be relevant to collusion or the reasonableness of the *Miller-Shugart* settlements. AIG argues that both the frequency and the content of entries reflecting communications are relevant to these issues.

The parties disagree about whether the billing invoices were fairly requested by the discovery requests and subpoenas, and whether Kutak's and Jacobson's objections to the subpoenas were timely. The Court need not resolve those disagreements, however, because the Court finds that the information sought from the invoices is not discoverable upon consideration of the relevance and proportionality factors, and that the narratives on the invoices are likely privileged to the extent the actual communications have not been disclosed.

Beginning with relevance, AIG argues that the frequency of communications between or among counsel is relevant to show the extent of Jacobson's involvement in Ploen's and Enrico's state-court cases. (Def.'s Mem. Supp. at 5, 13, 18; Hr'g Tr. at 22–23.) That is simply too far-fetched. The number of times Jacobson or his counsel is mentioned in the fee invoices of counsel for AOM, Ploen, Enrico, and Jacobson is, at most, tangentially relevant to the extent of Jacobson's involvement in Ploen's and Enrico's state-court cases and settlements. On the other hand, the content of the communications summarized in the invoices could be relevant.

The Court thus turns to proportionality considerations. Ploen and Enrico received fee invoices from Messerli and Faegre for 18 months of legal work. (*See* Pls.' Mem. Opp'n at 4, 27.) According to Ploen and Enrico, most entries do not mention Jacobson or his

13

counsel. The Court finds that requiring Ploen and Enrico to review 18 months of invoices and redact privileged information line-by-line from narrative entries would be unnecessarily burdensome, particularly because Ploen and Enrico have produced or agreed to produce nearly all of their attorneys' actual communications with AOM's counsel and Jacobson's counsel. Compelling the production of invoices that summarize communications already produced would be duplicative and unnecessary. In addition, AIG has all of the documents and discovery produced in the state-court action between Enrico and AOM and in the state-court action between Ploen and AOM, as well as Jacobson's actual communications with Ploen and Enrico and Jacobson's counsel's actual communications with Ploen's and Enrico's counsel. The availability and extent of this discovery minimizes the importance of communications summarized on billing invoices to resolving the applicability of Exclusion 4(h), the reasonableness of the settlements, and collusion.

Fredrikson's invoices for AOM total more than 200 pages with more than 1,000 entries. (*See* Fredrikson's Mem. Opp'n at 19.) The same relevance and proportionality findings made above apply to these invoices. In addition, narrative entries on Fredrikson's invoices are not likely to show the extent of Jacobson's involvement in Ploen's and Enrico's state-court cases, given that Fredrikson represented AOM.

With respect to privilege, the narrative portions of the invoices that AIG seeks are summaries of communications between counsel for Enrico, Ploen, Jacobson, and AOM. To the extent the actual underlying communications have not been produced, entries that describe substantive work performed by the attorneys or their mental impressions would

be privileged. *See Cardenas v. Prudential Ins. Co. of Am.*, No. 99-1422 (JRT/FLN), 2003 WL 21302957, at *2 (D. Minn. May 16, 2003) (recognizing that billing records are generally not privileged, but entries containing confidential communications, legal advice, or work product can be privileged). And if the actual communications were produced, summaries of the communications on billing invoices would be duplicative.

Notwithstanding the above, Jacobson and Kutak agreed, before AIG filed the motion to compel, to provide redacted invoices describing communications between counsel. (*See* Jacobson & Kutak's Mem. Opp'n at 2, 5, Dkt. No. 38.) Nothing in the Court's decision should be interpreted to preclude Jacobson and Kutak from producing redacted invoices, should they so choose.

### C.   Mediation Statement and Communications

AIG seeks communications between counsel for Enrico, Ploen, and AOM about the mediation of the state-court actions, arguing that the material is relevant to the issues of reasonableness, collusion, and the applicability of Exclusion 4(h). (Def.'s Mem. Supp. at 20.) AOM has agreed to produce all mediation-related communications between its counsel and Ploen's and Enrico's counsel (Fredrikson's Mem. Opp'n at 20); thus, AIG's motion as to AOM is moot.

Ploen and Enrico have declined to produce emails exchanged solely between their attorneys and the mediation statement submitted to the mediator. (Pls.' Mem. Opp'n at 27–28.) Ploen has provided a privilege log of those communications to AIG. (*Id.* at 28.)

Ploen and Enrico contend the mediation statement is privileged under Minn. Stat. § 595.02, subd. 1(m). (Pls.' Mem. Opp'n at 28.) That statute provides in relevant part: "A

15

person cannot be examined as to any communication or document, including work notes, made or used in the course of or because of mediation pursuant to an agreement to mediate or a collaborative law process pursuant to an agreement to participate in collaborative law." Minn. Stat. § 595.02, subd. 1(m). There is no dispute that the mediation statement was created to share confidential information with the mediator. Consequently, the mediation statement need not be disclosed.

With respect to mediation-related communications between Ploen's and Enrico's counsel, the Court's earlier finding that the common-interest doctrine applies to the communications between Ploen's and Enrico's state-court attorneys applies equally to this issue. Ploen and Enrico had common legal interests in their claims against AOM, and the mediation-related communications between their attorneys were made in the course of formulating common legal strategies.

Accordingly, the Court denies this aspect of AIG's motion to compel, except to instruct Enrico to provide a log of documents he is withholding based on privilege within fourteen days of the date of this Order, unless AIG and Enrico agree that Ploen's privilege log will suffice.

### D. Fredrikson's, Jacobson's, and Kutak's Requests for an Award of Expenses

Fredrikson argues that AIG should have sought discovery directly from AOM—and only from AOM—in the state court action between AIG and AOM, rather than serve a subpoena on Fredrikson. (Fredrikson's Mem. Opp'n at 12–14.) The Court agreed and therefore denied at the hearing Ploen's and Enrico's motion to compel discovery from

Fredrikson. Fredrikson also requested an award of attorney's fees pursuant to Rule 45(d)(1), and the Court directed Fredrikson's counsel to submit a declaration of costs incurred in opposing the motion. After the Court reviews that declaration (Dkt. No. 42) and AIG's response (Dkt. No. 44), the Court will address the propriety of attorney's fees under Rule 45(d)(1) in a separate order. The Court will also address Jacobson and Kutak's request for attorney's fees in that same forthcoming order.

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant AIG Specialty Insurance Company's Motions to Compel (Dkt. No. 23 in *Ploen*, Case No. 21-cv-2248; Dkt. No. 21 in *Enrico*, Case No. 21-cv-2264) are **GRANTED in part** and **DENIED in part** as set forth fully above.


Date: June 21, 2022                *s/ John F. Docherty*
                                   JOHN F. DOCHERTY
                                   United States Magistrate Judge